██ ANTHONY COLAO, Appellant, v THOMAS E. MILLS, as Delaware County Sheriff, et al., Respondents. [834 NYS2d 375]—

---

Kane, J. Appeal from an order of the Supreme Court (Coccoma, J.), entered April 5, 2006 in Delaware County, which, upon remittal, granted defendants' motion for summary judgment dismissing the complaint.

A woman telephoned the Delaware County Sheriff's office and advised the dispatcher that Patricia Bergman was involved in a domestic disturbance with plaintiff and might need assistance. The dispatcher then spoke with Bergman, who stated that she was afraid, plaintiff had weapons and alcohol in the residence and he was chasing her and wanted to kill her. She wanted assistance to return to plaintiff's house and retrieve her belongings. When a deputy arrived at the neighbor's home, where Bergman had been when she spoke to the dispatcher, Bergman was no longer there. The deputy went to plaintiff's house and spoke to plaintiff, who refused to allow officers to search his home. He then consented to a limited search solely to see if Bergman was in the residence. The two officers who conducted a cursory search did not find Bergman inside. Other officers arrived. They searched a barn, outbuildings and around a lake on plaintiff's property. After officers questioned him about broken glass on the deck and yard and a broken telephone and lamp in a dumpster, plaintiff revealed that he argued with Bergman that morning, the phone broke during that argument, he threw out the broken furniture to avoid being arrested and the last time he saw Bergman she fell on her hands and knees as she was running up the driveway. The officers then requested permission to conduct a more thorough search of plaintiff's house in any places where a person could be hidden. The parties dispute whether plaintiff consented, but the officers did execute another search, which included looking under beds, in closets and in a large gun safe. This second search was also unfruitful. Up to five officers remained on plaintiff's property for several hours, using his home as a command post for the search for

Bergman. One deputy regularly used plaintiff's phone to call the dispatcher, answered the phone and spoke to witnesses and friends. The deputy asserts that plaintiff granted him permission to use and answer the phone because they were working as a team to find Bergman. Plaintiff denies granting permission and felt the phone and his home were commandeered by the police against his wishes. Although the search was called off that afternoon, Bergman was found in the woods down the road the next day.

Plaintiff commenced this action asserting, among other things, a cause of action under 42 USC § 1983 alleging that defendants unlawfully searched and seized his property in violation of his Fourth Amendment rights. Defendants moved to dismiss under CPLR 3211 and 3212. Supreme Court (Hester, Jr., J.) initially granted the motion, but this Court reversed and remitted for a hearing on the limited issue of qualified immunity based on either the consent or exigent circumstances exception to the warrant requirement (3 AD3d 702 [2004]). After a lengthy hearing, Supreme Court (Coccoma, J.) determined that defendants were entitled to qualified immunity due to the exigent circumstances and granted the motion for summary judgment. Plaintiff appeals.

Government officials performing discretionary functions are entitled to qualified immunity, thereby shielding them from civil liability, as long as their actions did not violate the plaintiff's clearly established legal rights; it must be objectively reasonable for the defendants to have believed that their conduct as related to the plaintiff was lawful under the circumstances (*see Anderson v Creighton*, 483 US 635, 638-640 [1987]; *Demoret v Zegarelli*, 451 F3d 140, 148-149 [2d Cir 2006]; *Linen v County of Rensselaer*, 274 AD2d 911, 914 [2000]). The two parts of this inquiry are whether plaintiff suffered a constitutional violation at the hands of defendants and, if so, whether the constitutional right was clearly established at the time so that any reasonable officer would clearly recognize that his or her conduct was unlawful in that situation (*see Cowan ex rel. Estate of Cooper v Breen*, 352 F3d 756, 761 [2d Cir 2003]). Immunity should ordinarily be determined by the court as a matter of law early in the case (*see Hunter v Bryant*, 502 US 224, 228 [1991]). On this appeal, the limited issues are whether defendants' conduct toward plaintiff, namely their warrantless entry into his home and remaining on his property, was permissible under the exigent circumstances exception to the Fourth Amendment's warrant requirement and, if not, whether it would be objectively clear to reasonable officers that such conduct was unlawful under the circumstances.

The Court of Appeals outlined the elements of the exigent circumstances exception as follows: the police must have reasonable grounds to believe that an emergency exists or there is an immediate need for their assistance to protect life or property, there must be some reasonable basis to associate the emergency with the area to be searched, and the search must not be motivated by an intent to arrest and seize evidence (*see People v Mitchell*, 39 NY2d 173, 177-178 [1976], *cert denied* 426 US 953 [1976]; *see also People v Molnar*, 98 NY2d 328, 332 [2002]). The United States Supreme Court recently reiterated that "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury," but specifically clarified that the circumstances must be objectively reasonable and the subjective intent of the individual officers is irrelevant to the exigency determination (*Brigham City, Utah v Stuart*, 547 US —, —, 126 S Ct 1943, 1947-1948 [2006] [noting that the Court granted certiorari to resolve differences among state courts and federal circuit courts, citing *People v Mitchell* (*supra*) among those cases]). That decision thus eliminated the intent element previously identified by the Court of Appeals.

Here, defendants possessed information that Bergman was missing, she had been involved in a domestic disturbance with plaintiff, she feared that plaintiff would kill her, he had alcohol and weapons in his home and she intended to return there. It was objectively reasonable for police officers possessing this information to believe that Bergman could be inside plaintiff's house, she could be injured and they needed to find her quickly. Under the circumstances, defendants were justified in entering plaintiff's home and searching for Bergman (*see People v Evans*, 21 AD3d 1317, 1317-1318 [2005], *lv denied* 6 NY3d 775 [2006]). It was reasonable for defendants to conduct the second search of every area inside the house where a person or body could be located, including the large gun safe, because the initial cursory search did not include all areas where a person could hide or be hidden, Bergman had still not been located and, after the initial search, defendants obtained additional information indicating that the domestic disturbance may have been violent (*compare Tierney v Davidson*, 133 F3d 189, 197-199 [2d Cir 1998]). Hence, defendants' conduct in executing the two warrantless searches of plaintiff's house was permissible under the exigent circumstances exception and did not violate plaintiff's constitutional rights.

The question then becomes whether defendants exceeded the scope of their authority to intrude on plaintiff's property by

remaining there for several hours and using the property as a command post for the missing person search. The scope and duration of permissible police conduct is limited by, and must be reasonably related to, the exigencies of the situation (*see People v Alster*, 28 AD3d 490, 491 [2006], *lv denied* 7 NY3d 809 [2006]; *People v Price*, 211 AD2d 943, 944 [1995], *lv denied* 86 NY2d 739 [1995]; *People v Rielly*, 190 AD2d 695, 695 [1993], *lvs denied* 81 NY2d 891, 1079 [1993]). Officers may remain in a home while the situation is in flux and the well-being of a person is still in question (*see Schreiber v Moe*, 445 F Supp 2d 799, 811 [WD Mich 2006]). Courts must review police conduct on a case-by-case basis to assess its reasonableness in relation to the exigency (*see Tierney v Davidson, supra* at 197). Because of the conflicting versions of the facts regarding defendants' conduct after the second search, we cannot determine as a matter of law whether defendants violated plaintiff's constitutional rights.

If we assume that defendants did violate plaintiff's rights by remaining on his property, and the right to be free from unreasonable seizures of property is clearly established, we must then address the second part of the qualified immunity test and determine whether reasonable officers would know that the conduct here was unlawful at the time (*see Cowan ex rel. Estate of Cooper v Breen*, 352 F3d 756, 761, 764 [2d Cir 2003], *supra*). The standard for qualified immunity provides room for officers to make reasonable mistakes, especially when they are confronted with tense circumstances in which they must make on-the-spot judgment calls (*see Hunter v Bryant*, 502 US 224, 229 [1991], *supra*; *Lennon v Miller*, 66 F3d 416, 424 [2d Cir 1995]). Defendants were confronted with a situation in which a woman was missing from the area near plaintiff's house under questionable circumstances and others were calling his phone with information about this woman. Although the facts are in dispute regarding exactly what happened after the second search (*compare Cowan ex rel. Estate of Cooper v Breen, supra* at 761-763), even assuming that defendants exceeded the scope of the emergency and thus violated plaintiff's constitutional rights by remaining on his property and answering his phone, a rational jury could not find that defendants' judgment in this regard "was so flawed that no reasonable officer would have made a similar choice" (*Lennon v Miller, supra* at 425). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued" (*Hunter v Bryant, supra* at 229 [citations omitted]). Accordingly, defendants were

entitled to summary judgment because their conduct was protected under a shield of qualified immunity.

Mercure, J.P., Peters and Mugglin, JJ., concur. Ordered that the order is affirmed, without costs.